IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KENNETH TAYLOR, § | | |
| TDCJ # 00828757, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| VS. § | CIVIL ACTION NO. 3:18-0394 | |
| § | | |
| BRYAN COLLIER, *et al.* § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Taylor, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), filed a complaint under 42 U.S.C. § 1983 alleging violations of his civil rights. Plaintiff proceeds *pro se* and *in forma pauperis*. Because Taylor is a prisoner seeking redress from government officials, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the pleadings. 28 U.S.C. § 1915A(a). The Court must dismiss the case, in whole or in part, if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). After reviewing Plaintiff's complaint (Dkt. 1), his motions for emergency relief (Dkt. 10, Dkt. 11), the applicable authorities, the record in *Taylor v. Collier* (Civil Action No. 3:17-0358), and all matters of record, the Court concludes that Plaintiff's claims must be **DISMISSED** for the reasons that follow.

## I. BACKGROUND

Taylor filed his complaint in this suit on November 19, 2018 against seven Defendants affiliated with TDCJ or the University of Texas Medical Branch ("UTMB").[1] Taylor alleges that medical and security personnel at TDCJ's Terrell Unit have refused him medical treatment, denied him access to the pill window, and failed to honor his medical restrictions that require a cell located near the clinic and pill window (Dkt. 1, at 4-5).[2] He claims that medical and security personnel "passed the buck," each blaming the other while failing to address the issues affecting him (*id*. at 4-5). Taylor additionally alleges that Defendant Owusu refused to treat him by referring him to Hospital Galveston, and that some Defendants involved in medical care at the Terrell Unit (Matthews, Mbugua, and Nwafor) blocked his access to particular medical providers (*id*. at 4-5).[3] Finally, he alleges that supervisory officials at TDCJ (Executive Director Collier, Warden Comstock at the Terrell Unit, and Assistant Warden Patrick at the Terrell

---

[1] The seven Defendants named by Plaintiff in this lawsuit are (1) Bryan Collier, Executive Director of TDCJ; (2) Mary Comstock, head warden at the Terrell Unit; (3) Anthony Patrick, Assistant Warden at the Terrell Unit; (4) Austee Matthews, Medical Administrator at the Terrell Unit; (5) Kwobena Owusu, M.D., "UTMB Medical" at the Terrell Unit; (6) David Mbugua, N.P., "UTMB Medical" at the Terrell Unit; and (7) A. Nwafor, N.P., "UTMB Medical" at the Terrell Unit.

[2] *See id*. at 4 (alleging imminent danger and life endangerment because plaintiff "has been repeatedly denied medical treatment" when medical staff "refuse" to treat him and security staff deny him "access to the medical department" or "access to medication by not letting Plaintiff go to the pill window"); *id*. at 5 (alleging that "medical doctors at UTMB Galveston and C.T. Terrell have both requested to have me moved as close to the medical department but Plaintiff still has not been moved").

[3] *See id*. at 4-5 (alleging that Owusu, Mbugua and Nwafor, rather than treating him, "have simply told him he has an appointment with neurology at Hospital Galveston"); *id*. at 5 (alleging that Matthews, Mbugua, and Nwafor "refuse" to allow him to see medical doctors including Owusu).

Unit) retaliated against him and refused him medical treatment (*id*. at 4).

In November 2018, at the time Taylor filed his complaint in this lawsuit, he was litigating another civil action before this Court regarding the absence of air conditioning at the Terrell Unit. *See Taylor v. Collier*, Civil Action No. 3:17-0358 (the "2017 case").[4] In the 2017 case, Taylor originally brought a claim that extreme temperatures at the Terrell Unit endangered his health because he had a history of strokes and other cardiovascular issues. However, he added new allegations to the 2017 case when he filed several requests for emergency relief in October and November 2018, and his new allegations overlapped substantially with his allegations in this case. As the Court recounted in an order in the 2017 case, Taylor alleged that medical and security personnel at the Terrell Unit had refused to assign him a cell that complied with his medical restrictions, that officials were impeding his access to the pill window, and that officials were effectively denying him his medications:

> Plaintiff's emergency motion claims that he had surgery in August 2018 and has a "new stent in his brain," and that he was required to take the medication Clopidogel to keep his stent from "getting plugged and causing a stroke" (Dkt. 43, at 4). He presents a partial medical record dated October 11, 2018, which states that Taylor "had a breakthrough seizure" and "NEEDS TO BE AS CLOSE TO PILL WINDOW AS POSSIBLE" to increase compliance with medication regime (Dkt. 42, at 7). Plaintiff also alleges that TDCJ officials refused to comply with the medical provider's request to house him close to the pill window and, because he could not walk to the pill window, effectively denied him access to his medication (Dkt. 43, at 5).

Dkt. 56 (Civil Action No. 3:17-0358), at 3. Taylor also alleged that officials at the

---

[4] The defendants in the 2017 case were Bryan Collier, Executive Director of TDCJ; Jacqueline Jones at the Terrell Unit; and Eric C. Miller at the Terrell Unit.

Terrell Unit "passed the buck" and failed to comply with medical instructions regarding his medications and his housing assignment. *See* Dkt. 45 (Civil Action No. 3:17-0358), at 3.

Taylor initiated the case at bar on November 19, 2018, while the emergency motions in the 2017 case were pending, making the same allegations as those in the emergency motions. On November 20, 2018, the Court entered an order in the 2017 case instructing the defendants to file an expedited response to Taylor's emergency complaints. *See* Dkt. 45 (Civil Action No. 3:17-0358). The defendants complied. *See* Dkt. 46, Dkt. 47 & Dkt. 48 (Civil Action No. 3:17-0358). In their responses, they represented to the Court that, on November 21, 2018, Taylor's cell assignment had changed from D-wing, pod 4, where he had been since his return from the hospital on August 30, 2018, to A-wing, pod 4. *See* Dkt. 56 (Civil Action NO. 3:17-0358), at 4 (citing defendants' filings). They also explained that both cell assignments had been acceptable under Taylor's health classification but that the new location was even closer to the clinic. *See id.*

On March 26, 2019, after full briefing and consideration, the Court entered an order in the 2017 case denying emergency relief. The Court's order stated in part as follows:

> Plaintiff's recent filings agree that his move to A-wing on November 21, 2018, resolved nearly all his complaints (Dkt. 49; Dkt. 50, at 4). Plaintiff clearly states that he now is going to the pill window "every night" (Dkt. 52, at 2). Defendants have represented to the Court that Plaintiff now is housed as close as possible to the infirmary, and Plaintiff has not disputed their representation. Plaintiff's . . . . request for injunctive relief based on

> his cell assignment and related ability to receive medications is **denied as moot**.

(*Id.* at 4) (footnotes omitted). The Court's opinion also denied emergency relief based on Taylor's request for a specific medication and his allegations of retaliation (*id.* at 5-6). In the context of ruling on Taylor's motion for leave to amend his pleadings, the Court addressed Taylor's allegations that he had been denied treatment for his medical condition:

> Plaintiff . . . alleges that "medical staff has repeatedly refused the plaintiff emergency medical treatment for stroke like symptoms" (Dkt. 31, at 3). As stated above, the record before the Court demonstrates that Plaintiff received emergency medical attention in August 2018, after Plaintiff filed his motion to amend, which included surgery for placement of a stent. Moreover, Plaintiff's motion to amend states that he has been "seen repeatedly" by clinic personnel and complains only that he had not seen a particular doctor, Kwabena Owusu, M.D, "for two months" (*id.*).

(*Id.* at 7). On the same day, the Court granted summary judgment for the defendants on Plaintiff's claim that the extreme heat at the Terrell Unit violated his Eighth Amendment rights, and entered final judgment. *See* Dkt. 57 & Dkt. 58 (Civil Action No. 3:17-0358). Taylor filed a notice of appeal, which the Fifth Circuit dismissed on June 13, 2019 for want of prosecution. *See* Dkt. 64 (Civil Action No. 3:17-0358).

On June 21, 2019, approximately one week after his appeal in the 2017 case was dismissed, Taylor filed a motion for emergency injunctive relief (Dkt. 10) in the case at bar. Plaintiff's emergency motion first claims that emergency relief is necessary because his stent placed during his August 2018 surgery needs to be replaced and, while he waits for the replacement stent, he has symptoms whenever he "overheats," including dizziness, headaches, and seizures "of all kinds" (*id.* at 3). Second, he alleges that, at

some point after the 2017 case was dismissed, he was "move[d] again outside [his] walking limits" (*id*. at 3-4), although he provides no supporting facts or dates for his allegation. Third, he alleges that emergency relief is warranted because "someone is tampering with [his] medical records" and that "it is [his] belief that someone is deleting some and/or all medical records" (*id*. at 4), noting that he has filed a complaint with the Texas Medical Board. Fourth, he states that the Terrell Unit had a "major power outage" on June 6, 2019 that lasted "more than 12 hours" with "no power at all," "no ventilation" in the living areas, and "no access to the respite area" (*id*.). He takes issue with Defendants' representations in the 2017 case that respite areas for extreme heat were available, calling the representations "perjury" (*id*.).

Plaintiff's complaint seeks relief of $1 million, in addition to injunctive relief "for the proper medical care, w[h]ich the plaintiff believe[s] he cannot get at [the] Terrell Unit" (Dkt. 1, at 4). He sues Defendants in their official and individual capacities. In his emergency motion, Taylor requests the following relief:

1. to be moved to a different TDCJ unit with "proper medical care" and air conditioning, and back-up ventilation during power outages; or

2. to be moved to a unit meeting the requirements above but "in the Texas Tech University treatment area"; or,

3. an order directing the Terrell Unit to provide "one wing of housing with air conditioning for heat restricted inmates such as Plaintiff."

(Dkt. 10, at 10). Plaintiff states that an air-conditioned wing is provided at other "medical units such as Jester III" (*id*.). Plaintiff also filed a supplement to his request for emergency relief, stating that some inmates had been moved to air-conditioned units for

the summer but that he had not and that he believed officials' reason for not moving him "can only be retaliation" (Dkt. 11, at 2).

On July 10, 2019, Taylor informed the Court that he had been moved to the Jester III Unit (Dkt. 12).

## II.   LEGAL STANDARDS

As required by the PLRA, the Court screens this case to determine whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b); *see* 28 U.S.C. § 1915(e)(2)(B). A district court may dismiss a complaint as frivolous "if it lacks an arguable basis in law or fact." *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005); *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. . . . A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

A dismissal for failure to state a claim is governed by the same standard as a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir. 2002). Under this standard, the Court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the

complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal citations and quotation marks omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger*, 404 F.3d at 373.

### III. <u>ANALYSIS</u>

Plaintiff brings claims under the Eighth Amendment to the Constitution. Under federal statute, 42 U.S.C. § 1983, a plaintiff may bring a civil rights claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

### A. Official Immunity

Defendants were, at all relevant times, TDCJ or UTMB officials. A claim against a state employee in his or her official capacity is a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015); *Moore v. La. Bd. Of Elem. And Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting § 1983. *NiGen*, 804 F.3d at 394.

Plaintiff seeks damages of $1 million. To the extent he brings any claims for money damages against Defendants in their official capacities, the state is immune under the Eleventh Amendment. The claims therefore will be dismissed for lack of jurisdiction.

### B. Plaintiff's Claims for Relief

Plaintiff's claims in his complaint (Dkt. 1) pertain only to denied medical treatment and denied medical restrictions. His emergency motions (Dkt. 10, Dkt. 11) also pertain to his medical complaints, but include additional allegations about heat and power outages at the Terrell Unit. Taylor has not sought leave to amend his complaint.

#### 1. Claims for Injunctive Relief

Plaintiff's claims for injunctive relief in his complaint and emergency motion are specific to the medical treatment and conditions at the Terrell Unit. However, Taylor has

informed the Court that TDCJ officials now have moved him to the Jester III Unit (Dkt. 12).[5]

Because Taylor is no longer incarcerated at the Terrell Unit and all of his requests for injunctive relief were based on events or conditions at that unit, his requests for injunctive relief will be **denied as moot**. *See Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) ("[m]ootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff"); *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998) ("we find it beyond dispute that a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined").[6]

### 2. Claims for Monetary Damages

Taylor seeks damages of $1 million for his claims in this lawsuit. These claims will be dismissed because, to the extent they are not precluded by previous litigation, they fail to state a valid claim for relief.

#### a. Claim and Issue Preclusion

The doctrine of "res judicata," or claim preclusion, prevents a litigant from bringing a claim that previously has been adjudicated when four requirements are satisfied: (1) the parties in the later case are identical to, or in privity with, the parties of the prior case; (2) the prior judgment was rendered by a court of competent jurisdiction;

---

[5] Jester III is one of the units Taylor has identified as satisfying his requests for air conditioning and back-up power sources. *See* Dkt. 10, at 10.

[6] In addition, many of Taylor's claims for injunctive relief are precluded by prior litigation in the 2017 case or fail to state a claim under the Eighth Amendment, as explained below.

(3) the prior case concluded with a final judgment on the merits; and (4) the same claim or cause of action is involved in both cases. *See United States v. Davenport*, 484 F.3d 321, 325-26 (5th Cir. 2007). When two cases "are based on the same nucleus of operative facts," the preclusive effect of a prior final judgment on the merits bars a party from bringing a new suit raising the same claim. *Id.* at 326. The doctrine of "collateral estoppel," or issue preclusion, bars the relitigation of "issues actually litigated and necessary to the outcome of the first action." *Id.* (internal citation and quotation marks omitted). Strict mutuality of parties is not required for collateral estoppel. *McCoy v. Hernandez*, 203 F.3d 371, 374 (5th Cir. 2000). Although generally res judicata is an affirmative defense, a court may dismiss *sua sponte* when the two lawsuits were brought before the same court, or when all relevant facts in the record are uncontroverted. *McIntyre v. Ben E. Keith Co.*, 754 F. App'x 262, 264-65 (5th Cir. 2018) (citing *Mowbray v. Cameron Cty.*, 274 F.3d 269, 281 (5th Cir. 2001); *Am. Furniture Co. v. Int'l Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. 1981)).

In this lawsuit, Taylor brings claims against TDCJ and UTMB personnel alleging that Terrell Unit officials refused him access to the pill window, refused to provide a cell assignment in a location that complied with his medical restrictions, refused to address his problems by "passing the buck" between medical and security personnel, and denied him medical treatment. As recited above, these claims were addressed in the 2017 case. *See* Dkt. 45, Dkt. 56, Dkt. 57 & Dkt. 58 (Civil Action No. 3:17-0358).[7] To the extent the

---

[7] Although Taylor did not name UTMB officials as defendants in the 2017 case, he raised several claims regarding the conduct of medical personnel. The Court considered the

11 / 15

claims are not moot, it appears that many, if not all, are precluded under the doctrines of res judicata and collateral estoppel. *See Davenport*, 484 F.3d at 325-26.

### b. Eighth Amendment

However, even if the Court were to assume that any of Plaintiff's claims for damages in this suit are not moot and are not precluded by the litigation in the 2017 case, Taylor's claims would be subject to dismissal for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A(b).

To state a claim under the Eighth Amendment, a plaintiff must demonstrate that the defendant exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner must show "objective exposure to a substantial risk of serious harm." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). He also must show that the defendant acted, or failed to act, with deliberate indifference to the risk. *Id*. at 345-46. A defendant's personal involvement is an essential element of a civil rights cause of action, meaning that there must be an affirmative link between the injury and a defendant's conduct. *See Delaughter v. Woodard*, 909 F.3d 130, 136-37 (5th Cir. 2018).

---

allegations, and denied relief, after defendants' counsel in the 2017 case presented medical records as an aid to the Court. *See* Dkt. 56 (Civil Action No. 3:17-0358), at 3-4 ("Regarding Plaintiff's medication compliance, Defendants represent that issues regarding medication are delegated to [UTMB] rather than TDCJ but have supplied Plaintiff's pill window logs"); *id*. at 4 (denying claim for emergency relief regarding access to medication).

The deliberate indifference standard has both objective and subjective components. The plaintiff must show that: (1) the prison official was aware of facts from which the inference of an excessive risk to the prisoner's health and safety could be drawn; and (2) the official actually drew that inference. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015); *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa*, 807 F.3d at 665. Even poor professional judgment or medical malpractice do not rise to the level of "deliberate indifference" necessary to show a constitutional violation. *Harris*, 198 F.3d at 159.

Taylor's complaint alleges that medical personnel from the Terrell Unit or UTMB blocked his access to medical doctors, including Dr. Owusu (Dkt. 1, at 4-5). He also alleges that Dr. Owusu refused to provide proper medical treatment, although he provides no details other than alleging that Owusu had referred him to Hospital Galveston (*id*. at 3-4). However, Plaintiff's complaint, and the grievances he attaches to his complaint, demonstrate that he is receiving regular medical attention.[8] To the extent Taylor contends in this lawsuit that he should have been able to see a different medical provider

---

[8] *See, e.g., id*. at 4-5 (complaint alleges that medical staff have "denied" him medical treatment by "simply [telling] him he has an appointment" with the neurology department); *id*. at 7 (complaint alleges that he was "refused access to the medical department" at 7:00 a.m. on October 19, 2018 but was seen and treated at 8:00 p.m. the same day); *id*. at 9-10 (Plaintiff complains in a 2018 administrative grievance that he wanted to see medical doctors, not only nurse practitioners, for his medical issues); *id*. at 13-14 (a response to a 2017 administrative grievance filed by Plaintiff states that he had been treated by Dr. Owusu twice and by Mbugua once in the previous 60 days).

or should have received different medical treatment from his providers, he fails to state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 107 (a plaintiff's mere disagreement with a particular medical treatment provided does not state a claim under the Eighth Amendment); *Brauner v. Coody*, 793 F.3d 493, 499 (5th Cir. 2015) (deliberate indifference is not shown when "medical records indicate that the plaintiff was afforded extensive medical care by prison officials," even when the plaintiff alleges that doctors "refus[ed] to accommodate his requests in the manner he desired") (internal citation, quotation marks, and alteration omitted). Additionally, Plaintiff has not pleaded any specific action or failure to act by any Defendant that exposed him to a "substantial risk of serious harm" as required for an Eighth Amendment claim, nor that any Defendant acted with deliberate indifference to such a risk. *See Gobert*, 463 F.3d at 345-46.[9]

Taylor's allegations regarding heat exposure in his emergency motion (Dkt. 10) are not relevant to the claims in his complaint (Dkt. 1), which pertain to an alleged denial of medical care. Moreover, his claims regarding heat exposure at the Terrell Unit are moot because he has moved to a different TDCJ unit, and are precluded because they were litigated to final judgment in the 2017 case. *See* Dkt. 57, Dkt. 58 (Civil Action No. 3:17-0358).

Finally, to the extent Taylor brings Eighth Amendment claims against supervisory TDCJ officials (in particular, Executive Director Bryan Collier; Warden Mary Comstock;

---

[9] As stated above, Taylor's allegations regarding his cell location, his walking restrictions, and his access to the pill window were litigated in the 2017 case. Additionally, the record in that case demonstrates that his cell assignment and access to medication did not state a claim under the Eighth Amendment. *See* Dkt. 56 (Civil Action No. 3:17-0358), at 3-5.

and Assistant Warden Anthony Patrick), his claim fails. Plaintiff alleges no specific facts against any of the supervisory officials and does not identify any specific involvement in an alleged violation of his rights. Absent personal involvement in a constitutional violation, supervisory liability cannot state a claim for relief under § 1983. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006).

For all of the reasons stated above, Plaintiff's claims for denial of adequate medical care or access to medical services will be dismissed under 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B).

### IV. **CONCLUSION**

The Court hereby **ORDERS** as follows:

1. Plaintiff's claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

2. Plaintiff's motion for emergency injunctive relief (Dkt. 10) and motion to supplement (Dkt. 11) are **DENIED as moot.**

The Clerk will provide the parties with a copy of this order.

SIGNED at Galveston, Texas, this 30th day of August, 2019.

George C. Hanks Jr.
United States District Judge